## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SIPCO, LLC,                                )
                                           )
                  Plaintiff,               )
                                           )
v.                                         )          Case No. CIV-19-709-PRW
                                           )
JASCO PRODUCTS COMPANY, LLC,               )
                                           )
                  Defendant.               )

## <u>ORDER</u>

Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint as to the '304 and '425 Patents (Dkt. 41). For the reasons that follow, the Motion (Dkt. 41) is **GRANTED**.

### *Background*

In 2019, Plaintiff SIPCO, LLC brought this patent infringement lawsuit against Defendant Jasco Products Company, LLC. The now-operative Second Amended Complaint (Dkt. 38) alleges infringement of four patents owned by Plaintiff. At issue in the instant Partial Motion to Dismiss are claims related to only two of those patents: the '304 and '425 patents.[1] Because the parties now agree that the claims related to the '425 patent should be dismissed, the Court limits its discussion of the background of this dispute to the '304 patent.

---

[1] U.S. Patent No. 8,335,304; U.S. Patent No. 7,650,425.

1

By all accounts, the '304 patent has a somewhat unique and complicated history. The patent application eventually giving rise to the '304 patent was initially filed with the United States Patent and Trademark Office ("PTO") in July of 2008. On October 20, 2010, the PTO issued an office action rejecting the application due to obviousness-type double patenting[2]—a doctrine that "prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent."[3] The office action stated that certain claims in the '304 patent application were "not patentably distinct" from claims in several pre-existing patents, including the '267 patent.[4] The PTO, however, offered Plaintiff a way out of the obviousness-type double patenting issue. "A timely filed terminal disclaimer," the office action explained, "may be used to overcome actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting . . . patent is shown to be commonly owned with this application."[5]

---

[2] *See* Office Action (Dkt. 46, Ex. 1), at 4–5.

[3] *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001).

[4] Office Action (Dkt. 46, Ex. 1), at 4–5; U.S. Patent No. 6,430,267.

[5] Office Action (Dkt. 46, Ex. 1), at 4. Terminal disclaimers can be used to overcome a double patenting rejection by "includ[ing] a provision that the patent or any patent issuing from the application is only enforceable for and during such period that it is owned by the same party (or parties) that owns the other patent[.]" *Definition of Double Patenting*, Manual of Patent Examining Procedure § 804. In effect, such a provision ties the expiration of the second patent to the first, ensuring that a patent holder does not receive an unjustified extension of the first patent term. *See, e.g.*, *Boehringer Ingelheim Intern. GmbH v. Barr Lab'ys, Inc.*, 592 F.3d 1340, 1346–47 (Fed. Cir. 2010).

On March 21, 2011, Plaintiff filed its response to the office action. In it, Plaintiff explained that it would submit terminal disclaimers "to overcome the nonstatutory double patenting rejection," as the patents identified by the office action, including the '267 patent, were "commonly owned by the present Applicant."[6] That same day, Plaintiff filed its terminal disclaimer to the '267 patent.[7] In the disclaimer Plaintiff "agree[d] that any patent so granted on the ['304 patent] application *shall be enforceable only for and during such period that it and the ['267] patent are commonly owned*."[8] A year and a half later, in reliance on the terminal disclaimers, the PTO issued the '304 patent.[9]

As it turns out, Plaintiff's statement in the March 2011 response—that it owned the '267 patent—wasn't true. At the time Plaintiff filed the response and terminal disclaimer, Plaintiff did not own the '267 patent. Nor has it ever owned the '267 patent.

Both parties now believe that the PTO's 2010 office action made a mistake. As Plaintiff explains, "[t]he '267 patent, which is owned by Nokia Networks Oy, is not in the same family as the '304 patent application or the other patents cited in the rejection; its subject matter is entirely unrelated to the subject matter of the '304 patent application or of the other patents cited in the rejection."[10] Plaintiff does (and did) own the '268 patent.[11]

---

[6] Resp. to Office Action (Dkt. 46, Ex. 2), at 13.

[7] *See* '267 Terminal Disclaimer (Dkt. 41, Ex. 3).

[8] '267 Terminal Disclaimer (Dkt. 41, Ex. 3) (emphasis added).

[9] *See* '304 Patent (Dkt. 38, Ex. 5).

[10] Pl.'s Suppl. Br. (Dkt. 53), at 2.

[11] U.S. Patent No. 6,430,268.

Unlike the '267 patent, the '268 patent is "in the same family as the '304 patent application and the other patents cited in the rejection and does relate to the subject matter of the '304 patent application."[12] The reference to the '267 patent in the 2010 office action was likely nothing more than a "transcribing error."[13] An error that Plaintiff compounded when, in response to the office action, it represented to the PTO that it indeed owned the '267 patent.

Plaintiff first attempted to correct the error in November 2016 with a petition requesting withdrawal of the '267 terminal disclaimer and replacement with a new '268 terminal disclaimer.[14] The PTO dismissed the petition in October 2017, finding that, pursuant to an update to the Manual of Patent Examining Procedure ("MPEP"), "withdrawal of the terminal disclaimer would not be warranted even if the error in the terminal disclaimer consisted of a transposition error."[15] Under the new guidance, the PTO would not withdraw terminal disclaimers in issued patents with inadvertent errors, but would allow patentees to file an explanation of the error along with additional terminal disclaimers disclaiming the correct patents.[16]

The PTO gave Plaintiff two months to request reconsideration of the dismissal decision. Rather than request reconsideration, Plaintiff filed a new, stand-alone '268

---

[12] Pl.'s Suppl. Br. (Dkt. 53), at 2.

[13] Pl.'s Suppl. Br. (Dkt. 53), at 2.

[14] Pet. (Dkt. 41, Ex. 5).

[15] Decision on Pet. (Dkt. 41, Ex. 6).

[16] Decision on Pet. (Dkt. 41, Ex. 6).

terminal disclaimer in February 2018.[17] By that time, the '304 patent had already expired pursuant to another terminal disclaimer.[18]

Defendant now moves to dismiss Plaintiff's claims relating to the '304 patent on the grounds that the '267 terminal disclaimer and the lack of shared ownership rendered the '304 patent unenforceable throughout its life.

### *Legal Standard*

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[19] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[20] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[21] At this stage, a plaintiff bears the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] The pleaded facts must be sufficient to

---

[17] '268 Terminal Disclaimer (Dkt. 41, Ex. 7).

[18] '764 Terminal Disclaimer (Dkt. 41, Ex. 1).

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[20] *Alvarado v. KOB-TV, L.L.C*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[21] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal citations & quotation marks omitted).

[22] *Twombly*, 550 U.S. at 555 (internal quotation marks & citations omitted) (alteration in original).

establish that the claim is plausible.[23] Ultimately, the Court may "dismiss a claim on the basis of a[ny] dispositive issue of law."[24]

"In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."[25] "In evaluating a Rule 12(b)(6) motion, a court may rely on documents outside the pleadings if they are integral to the plaintiff's claims and their authenticity is not disputed."[26]

### Discussion

The Court first addresses Plaintiff's claims related to the '304 patent and then turns to the claims related to the '425 patent.

I.   *Plaintiff's claims related to the '304 patent are dismissed.*

After extensive briefing, the dispositive question remaining in this matter is: when, if ever, was the '304 patent enforceable?[27]

---

[23] *See id.* Generally, a complaint will survive a Rule 12(b)(6) motion if it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[24] *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

[25] *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly–Clark Corp.*, 570 F. App'x. 927, 931 (Fed. Cir. 2014)).

[26] *Anderson*, 570 F. App'x at 932.

[27] The Motion (Dkt. 41) separately argued that the infringement claim should fail because Plaintiff failed to mark or otherwise provide notice of the patents. Plaintiff responded that the marking requirements of 35 U.S.C. § 287(a) are inapplicable to method patents like claim 7 of the '304 patent. Defendant's Reply (Dkt. 46) and later supplemental briefings focus exclusively on the terminal disclaimer argument, and do not further contest the notice

Defendant's answer to the question is "Never." The 2011 '267 terminal disclaimer, Defendant argues, plainly shows that Plaintiff "agree[d] that any patent so granted on the ['304 patent] application shall be enforceable *only for and during such period that it and the ['267] patent are commonly owned*."[28] From the moment the '304 patent issued until the day it expired, it and the '267 patent have never been commonly owned. Defendant argues that the plain language of the '267 terminal disclaimer rendered the '304 patent immediately unenforceable.

Plaintiff disagrees, arguing that the '267 terminal disclaimer was an ineffective error, a legal nullity.[29] This is so, Plaintiff says, because the '267 terminal disclaimer was fundamentally disconnected from the principles undergirding terminal disclaimers in the first place. Terminal disclaimers are a tool to overcome obviousness-type double patenting. Where there is no double patenting problem—for example, between two unrelated inventions like the '267 and '304 patents—a terminal disclaimer is both unnecessary and ineffective. The primary purpose of the doctrine of obviousness-type double patenting and the use of terminal disclaimers is to prevent a patentee from enjoying an improper extension of the prior patent term. Plaintiff argues that no such risk ever existed between the '267 and '304 patents because they concern different subject matter.

---

issue. To the extent the matter is still live, the Court finds that dismissal is not warranted for the alleged failures to mark or provide notice.

[28] '267 Terminal Disclaimer (Dkt. 41, Ex. 3) (emphasis added).

[29] Pl.'s Suppl. Br. (Dkt. 53), at 2–4.

Plaintiff also notes that, in the course of prosecuting a patent application, patentees are barred by regulation from filing terminal disclaimers to patents they do not commonly own.[30] In Plaintiff's view, this underscores the ineffectual nature of the '267 terminal disclaimer. In addition, Plaintiff argues that no prejudice resulted from the '267 terminal disclaimer, because the transcription error of '268 to '267 would be clear to anyone looking at the '304 patent file.

Defendant does not contest the fact that the '267 terminal disclaimer did not, and could not have, improperly extended the '304 patent term. However, Defendant points out that the doctrine of double patenting is not based solely on the risk of timewise extensions. Other concerns include "possible harassment by multiple assignees, inconvenience to the Patent Office, and the possibility that one might avoid the effect of file wrapper estoppel by filing a second application."[31] The requirement that terminal disclaimers include a common ownership provision directly addresses the risk of harassment. Defendant thus contends that Plaintiff should be held to the plain language of the disclaimer, and that doing so would further one of the primary principles behind the use of terminal disclaimers.

The Court finds that the '267 terminal disclaimer rendered the '304 patent unenforceable upon issuance. The precise issue of erroneous terminal disclaimers is, if not

---

[30] *See, e.g.*, *In re Van Ornum*, 686 F.2d 937, 944 (C.C.P.A. 1982); *In re Hubbell*, 709 F.3d 1140, 1148–49 (Fed. Cir. 2013).

[31] *In re Van Ornum*, 686 F.2d at 947 (quoting *In re Robeson*, 331 F.2d 610, 615 (C.C.P.A. 1964)); *see also In re Cellect, LLC*, 81 F.4th 1216, 1221 (Fed. Cir. 2023).

a matter of first impression, at least a matter with scant legal explication.[32] However, a substantial body of regulation and Federal Circuit precedent supports the Court's conclusion that Plaintiff must be held to the promise it made to the PTO in order to secure issuance of the '304 patent.

The root of that conclusion is one of the bedrock functions of the patent system: public notice.[33] The public has a right to rely on a patent's file to understand the full scope of the monopoly granted by an issued patent.[34] To further that end, 35 U.S.C. § 253 makes clear that any terminal disclaimer "shall thereafter be considered as part of the original patent,"[35] while 37 C.F.R. § 1.321 spells out detailed requirements for the form and content of terminals disclaimers.[36] That same section states that "[s]uch terminal disclaimer is binding upon the grantee and its successors or assigns."[37]

---

[32] In *STC.UNM v. Intel Corp.*, 754 F.3d 940 (Fed. Cir. 2014), the District Court found that a patent was unenforceable from issuance because of a terminal disclaimer to a patent with an allegedly erroneous lack of common ownership. On review, the Federal Circuit disposed of the case on standing grounds and did not rule on the terminal disclaimer issue.

[33] *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 730–31 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 25–27 (1997); *Mahn v. Harwood*, 112 U.S. 354, 360–62 (1884).

[34] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978–79 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996) ("Further, it is only fair (and statutorily required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude. . . . They may understand what is the scope of the patent owner's rights by obtaining the patent and prosecution history—'the undisputed public record[.]'" (quoting *Senmed, Inc. v. Richard-Allan Med. Indus., Inc.*, 888 F.2d 815, 819 n.8 (Fed. Cir. 1989))).

[35] 35 U.S.C. § 253; *see In re Yamazaki*, 702 F.3d 1327, 1331–32 (Fed. Cir. 2012).

[36] 37 C.F.R. § 1.321.

[37] 37 C.F.R. § 1.321(b).

9

In *In re Dinsmore*,[38] a patent-holder applied for a reissuance of his patent that would remove a previously filed terminal disclaimer.[39] The granted patent and the disclaimed patent had never been commonly owned, and the patent-holder claimed that the terminal disclaimer had been filed "inadvertently."[40] The Federal Circuit noted that the required terminal disclaimer language that the new patent "shall be enforceable only for and during such period that it and the prior patent are commonly owned," was a "promise, which is clear on its face, [and which] can readily be given effect."[41] As for the patent-holder's argument that the recorded terminal disclaimer was ineffective or invalid, the court found that assertion "simply incorrect in the most straightforward sense."[42]

The question ultimately before the court in *Dinsmore* was whether there was an error cognizable under the reissue procedures, not the effectiveness of the terminal disclaimer.[43] Nevertheless, its discussion of the binding and public nature of the terminal disclaimer promise is relevant here. Indeed, as the PTO explained in rejecting Plaintiff's attempt to withdraw the '267 terminal disclaimer, *Dinsmore* and a string of other Federal Circuit opinions prompted the then-current revision of MPEP § 1490.[44] That section now

---

[38] 757 F.3d 1343 (Fed. Cir. 2014).

[39] *Id.* at 1344–46.

[40] *Id.*

[41] *Id.* at 1347.

[42] *Id.*

[43] *Id.* at 1347–49.

[44] Decision on Pet. (Dkt. 41, Ex. 6); MPEP § 1490.

makes clear that "[t]he mechanisms to correct a patent . . . are not available to withdraw or otherwise nullify the effect of a recorded terminal disclaimer."[45]

Plaintiff tries to distinguish this case from *Dinsmore* on the grounds that, here, there was no double-patenting problem between the '267 and '304 patents that needed to be overcome. The PTO made a mistake, which Plaintiff later tried to correct, but the terminal disclaimer lacked foundation from the very start.

Plaintiff provides a reason for why the error should have been caught by either the PTO or Plaintiff during prosecution. As Plaintiff suggests, if the terminal disclaimer had been proposed to a court as a remedy to a double-patenting rejection, the disclaimer likely would not have been allowed in the first instance due to the lack of common ownership.[46] But that didn't happen, and the error wasn't otherwise caught by either Plaintiff or the PTO.[47] The '304 patent issued with the '267 terminal disclaimer as an integral part of it. At that point, the public notice reasons for holding Plaintiff to the clear terms of its promise

---

[45] MPEP § 1490.VIII.B. Plaintiff points to MPEP § 1490.VI.D, which concerns terminal disclaimers identifying the wrong reference patent. As sections VI and VIII make clear, the correction method discussed in section VI may be available before the patent is issued and the erroneous terminal disclaimer recorded. The very limited options for correction or clarification discussed in section VIII.B govern after a patent has issued with a terminal disclaimer.

[46] *See, e.g.*, *In re Hubbell*, 709 F.3d at 1148–49; *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009).

[47] Plaintiff, of course, is responsible for the documents it prepares and files with the PTO. *See In re Yamazaki*, 702 F.3d at 1333 ("But Yamazaki was similarly inattentive. Yamazaki simply paid the issue fee upon receiving the PTO's Notice of Allowance and admittedly bypassed numerous opportunities to prevent the '991 patent from issuing with his petition still unresolved. Yamazaki thus shares primary responsibility for allowing the '991 patent to issue with the terminal disclaimer in place[.]" (citations omitted)).

kicked in, and the '304 patent became unenforceable until such time as it was commonly owned with the '267 patent.

Plaintiff's other arguments for finding the '267 terminal disclaimer ineffective are similarly unavailing. First, relating to public notice, Plaintiff argues that it would be obvious to anyone reviewing the '304 patent file that the '267 terminal disclaimer was erroneous, and that '268 was the intended prior patent; even a "cursory review" would reveal the mix-up.[48] Given that Plaintiff itself did not notice the error during prosecution or for several years thereafter, this assertion is hard to credit. Second, and relatedly, Plaintiff argues that there would be no prejudice to third parties to now find the '267 terminal disclaimer ineffective and substitute in the '268 disclaimer.[49] Possibly so, though the Court may not lightly assume that no member of the public previously relied on the patent file, including the '267 terminal disclaimer.[50] Finally, Plaintiff again highlights that there was no risk of a timewise extension of patent rights between the '267 and '304 patents, the "fundamental reason" for the doctrine of obviousness-type double patenting and the use of terminal disclaimers.[51] The Court agrees. But the lack of one policy concern, even one that is "fundamental," does nothing to mitigate the very real public notice concerns discussed above.

---

[48] Pl.'s Suppl. Br. (Dkt. 53), at 4–5.

[49] Pl.'s Suppl. Br. (Dkt. 53), at 4–5.

[50] *See Boehringer*, 592 F.3d at 1348–50; *Japanese Found. for Cancer Rsch. v. Lee*, 773 F.3d 1300, 1308 (Fed. Cir. 2014) (noting that the PTO "does not determine on an *ad hoc* basis whether the public has actually relied on [a disclaimer] filing").

[51] *See Boehringer*, 592 F.3d at 1347.

For the reasons discussed above, as supported by the undisputed records of the '304 patent file, the Court finds that the '267 terminal disclaimer rendered the '304 patent unenforceable for the period that the two patents were not commonly owned—as it happened, the life of the '304 patent. Accordingly, Plaintiff cannot state a claim of infringement of the '304 patent. Plaintiff's claims relating to the '304 patent are **DISMISSED**.

II. *Plaintiff's claims regarding the '425 patent are barred by statutory disclaimer.*

As to the '425 patent, Defendant argues that Plaintiff is unable to state a claim of infringement for the '425 patent because it statutorily disclaimed the asserted patent claims. A patentee may file a statutory disclaimer under 35 U.S.C. § 253, which "has the effect of canceling the claims from the patent and the patent is viewed as though the disclaimed claims had never existed in the patent."[52] In effect, the filing of such a disclaimer bars future attempts to enforce the patent subject to the disclaimer through an infringement suit.[53] Plaintiff's response acknowledges "that the statutory disclaimer bars Plaintiff's claims [on the '425 patent], as Defendant has argued," and Plaintiff "stipulates that its claims pursuant to the '425 Patent may be dismissed."[54] Accordingly, Plaintiff's claims regarding the '425 patent are **DISMISSED**.

---

[52] *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996).

[53] *See id*. ("[B]y filing a statutory disclaimer, [patentee] relinquished any right to exclude others from the subject matter of [the] claim [at issue in patent].").

[54] Pl.'s Resp. (Dkt. 43), at 2.

*Conclusion*

For the reasons discussed above, Defendant's Partial Motion to Dismiss (Dkt. 41) is **GRANTED**, and Plaintiff's claims regarding the '304 and '425 patents are **DISMISSED**.

**IT IS SO ORDERED** this 29th day of May 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE